Herrick C. Allen, Appellant, *v.* General Accident, Fire and Life Assurance Corporation, Limited, Respondent.

(Supreme Court, Appellate Term, First Department, January, 1917.)

Agency — implied power of resident manager of foreign insurance company — power of attorney — actions — evidence — judgments — appeal.

> The resident manager of a foreign insurance company in New York has no implied authority to engage an attorney to go to Europe with him to discuss with the home office the affairs of the agency in America and the question whether he has such power should be considered in the light of the general rules of the law of agency.

> Where his power of attorney is sufficiently broad said resident manager may employ an attorney even to go abroad if the business of the agency with third parties requires it.

Plaintiff, an attorney employed by the general counsel of a foreign insurance company, at the request of its resident manager in New York accompanied him on a trip to Europe and assisted him in making his report to the home office and in arranging with the company certain important details in regard to the management of its affairs in the United States of America. In an action to recover the expenses incurred by plaintiff for said trip, *held,* that the evidence showed that the resident manager employed plaintiff not to transact any business in behalf of his principal but to aid him in arranging with the home office details in regard to the administration of the work in this country, that is, not to do work in behalf of the corporation but to do work with. it for the resident manager, and that a judgment in favor of defendant should be affirmed.

Though an appellate court would not have reached the same decision upon questions of fact as the court below, it has no right to substitute its judgment for that of the trial justice.

WHITAKER, J., dissents.

APPEAL by the plaintiff from a judgment of the Municipal Court of the city of New York, borough of Manhattan, seventh district, in favor of the defendant, entered after a trial before the court without a jury.

Fred H. Rees, for appellant.

Beekman, Menken & Griscom, (S. Stanwood Menken, and Miguel E. de Aguero, Jr., of counsel), for respondent.

LEHMAN, J.    The plaintiff, an attorney employed by the general counsel of the defendant company in America, sued.for the expenses which he alleges he incurred at the request of the defendant's resident manager in accompanying him on a trip to Europe. The purpose of the trip to Europe was apparently to enable the resident manager to present his report to the home office of the corporation and to arrange with

the corporation certain important details in regard to the management of its affairs in the United States. It appears that the resident manager desired the assistance of the plaintiff in making his report and in arranging these details. I do not think that the resident manager of an insurance company in New York has any implied authority to engage an attorney to go to Europe with him to discuss with the home office the affairs of the agency in America. The power of attorney given to the agent is very broad and I agree that under that power the resident manager has authority to employ an attorney even to go abroad if the business of the agency requires it. By that, however, I mean the business of the agency with third parties. I do not think that an agent employed to transact a definite line of business has authority to engage counsel for the purpose of adjusting the relationship of the local office with the home office. The question of whether he has such power should be considered in the light of the general rules governing the law of agency. An agent who is deputed with power to transact the business of his principal within a local territory is certainly without authority to bind his principal in the transaction of business with himself, yet the evidence in this case shows that the resident manager employed the plaintiff, not to transact any business in behalf of his principal but to aid him in arranging with the home office details in regard to the administration of work here. When analyzed, therefore, it seems to me that the plaintiff's employment was not to do work in behalf of the corporation but to do work with the defendant corporation. The resident manager here wished to make a report concerning his administration to the home office and to the stockholders of the corporation. It may well be that in making such report and in discussing the details

the plaintiff was of service to the resident agent and of course, incidentally, to the defendant corporation, yet it does not follow that the resident agent was authorized to employ counsel or assistants to aid him to lay before his principal his report or to discuss the details of the report with the officers of the company. It seems to me that if the agent had authority to employ counsel it was only by virtue of the letter written to the home office asking for such authority. The very fact that he claims that he wrote such a letter shows that he had in mind that his power of attorney was not sufficient to authorize him to employ counsel without specific permission. If the resident agent did not himself without specific authorization have the right to make trips to Europe to discuss the matters of his agency with the home office whenever he saw fit, then of course he could not under any implied authority charge the corporation with the expenses of an assistant on such a trip. In my opinion an agent authorized to do business in America would not himself have a right to go to England and to charge the English office with the expense of his trip unless he received authority specifically for that purpose from his principal. The plaintiff, therefore, cannot rely upon implied authority but must rely upon proof that the defendant's home manager in charge of its general affairs authorized the resident manager here to take him to Europe and the evidence upon this point is conflicting and was resolved in the defendant's favor by the trial justice.

Even if, however, the resident manager had implied power to employ the plaintiff, I think there is a fair question of fact whether he did employ him. It is true that neither the plaintiff nor the resident manager's testimony is contradicted on this point but in the very nature of things it could not be contradicted and the

14

trial justice was not bound to believe their testimony even though not directly contradicted. Both the plaintiff and the resident manager have testified to many matters on which they are contradicted directly by the home manager and this contradiction, though not on this point, goes to material points in the case such as the authorization to go to Paris. The trial justice apparently did not believe the testimony of the plaintiff and his witnesses on these points. Moreover, it must be remembered that the trip to Europe was made in the spring of 1912. The plaintiff rendered no account of expenditures for this trip and apparently had no conversation in regard to the expenditures of this trip until the fall of 1913, when he left the employment of the defendant corporation. Even at that time he rendered no account but claims that he stated to the treasurer that there was an outstanding account of eighty dollars and ten cents against him in favor of the company and he testified: "I said well let that go until we get up this expense account which is going to take me some little time and he said all right. The matter left that way. They did not bill me for the $80, and the matter was to remain open."

The plaintiff did not thereafter render any account to the defendant until 1915 and the only reason that he gives is that he did not make this claim under advice of counsel until other litigation between him and the company was disposed of. When this testimony is considered, with his further testimony that it was his custom to lay out his expenses for traveling himself, and with the allegation of the complaint "7th. That there is due from the plaintiff to the defendant the sum of $86.10 which constitutes *the unexpended balance of the sum of money received by the plaintiff from the defendant for the expenses for*

*the previous trip,* with which sum plaintiff hereby credits the defendant," it becomes apparent that the plaintiff's testimony on this point could reasonably be disregarded by the trial justice.

While it may be that this court would not have reached the same decision as the justice below if we had the duty of passing upon the questions of fact in the first instance, yet we have no right to substitute our own judgment for that of the trial justice.

Judgment should, therefore, be affirmed, with twenty-five dollars costs.

Finch, J., concurs.

Whitaker, J. (dissenting). This action was brought to recover moneys claimed to have been expended by the plaintiff as living and traveling expenses of a trip to Europe between April 17 and May 25, 1912.

The complaint alleges that plaintiff was in the employ of defendant as its attorney in the state of New York, and general counsel for the United States; that between the 17th day of April, 1912, and the twenty-fifth day of May of the same year, plaintiff was traveling and staying abroad at defendant's request, and alleges an express promise made on behalf of the defendant to repay plaintiff his necessary traveling and living expenses while in Europe. The complaint also sets up as a second cause of action moneys paid out to and for the use of defendant. The answer admits plaintiff's allegations as to his journey abroad, but denies that it promised to pay plaintiff's expenses during such period, and denies that the moneys were paid out to its use and benefit.

At the commencement of the trial, defendant stipulated that the bill of particulars of plaintiff's claim,

which had been duly served, "should be received with the same force and effect as if the witness were on the stand and testified to the various items." The court and counsel for the respective parties stated that the only question in the case was whether the plaintiff made the trip with the authority of the defendant.

It is conceded that John A. Kelly and Claude Norie-Miller were the joint and several United States managers of defendant at the time plaintiff went abroad. Kelly and plaintiff testified, without contradiction, in substance that plaintiff went at the express request of John A. Kelly upon the business of the defendant. The other manager, Claude Norie-Miller, also testified that he knew of the intention of John A. Kelly, his joint manager, to take plaintiff with him, but testifies that he did not know that plaintiff's expenses were to be paid by defendant. I think the record discloses beyond controversy that Kelly did order plaintiff to go to Europe with him, did agree to pay his expenses, and that plaintiff did go on defendant's business, and while there attended to the business of defendant.

The only question to be determined on this appeal, therefore, is whether John A. Kelly had the legal authority to take the plaintiff to Europe upon the defendant's business, and to agree to pay his expenses.

The record contains much irrelevant matter. It does contain uncontradicted evidence that Kelly took plaintiff with him in the honest belief that it was wise to do so in furtherance of the defendant's interests, and that plaintiff did actually work in the defendant's business while upon the steamer going to Europe and after he arrived there. The question as to whether it was actually necessary or a wise thing to do to take the plaintiff with him is quite immaterial, although

defendant's agent, as appears by the record, seemed to think that it was.

There is another immaterial theory that defendant advanced upon the trial, and that is, that the trip to Europe was one which afforded plaintiff much pleasure. It is totally immaterial to the present question whether the trip was a pleasurable one or a disagreeable one. As before stated, the only question is as to the power or authority of Kelly, defendant's general agent and manager.

Kelly and Miller derived their power from a power of attorney, which it is conceded was in full force at the time Kelly took plaintiff with him. This power of attorney, so far as is material, provides as follows:

"WHEREAS the Corporation has appointed John Ainsworth Kelly of Fifty-five John street, New York City, New York and Claud Norie-Miller of General Buildings, Fourth and Walnut Streets, Philadelphia, Pennsylvania, United States of America, to be jointly and severally managers of its United States Branch for the transaction of Insurance Business, and to that end is desirous of appointing them its attorneys and investing them with the powers and authorities hereinafter mentioned; now therefore these presents witness that the Corporation does hereby appoint John Ainsworth Kelly and Claud Norie-Miller to be jointly and severally the true, lawful, sole and exclusive Managers of its Insurance Business in the United States of America, and for that purpose to be the true and lawful Attorneys, Agents and representatives of the Corporation throughout the United States of America, and for and in the name and on behalf of the Corporation to execute all and singular the powers and authorities hereinafter mentioned, that it to say:

"*First.* To continue and to manage the business of the Corporation in those United States in which the

Corporation is now engaged in business, and to attend to and conduct business for the Corporation in such other States as the Corporation shall from time to time approve, and to maintain in the City of Philadelphia an office which is to be the chief office in the United States of America for the said Corporation, and to be its true and lawful Agents and Attorneys in and for the United States of America on whom all process of Law against said Corporation may be served in any Action or proceeding against said Corporation in the United States of America, subject and in accordance with all the provisions of the Laws of said States.

"*Second.* To accept, sign and issue the necessary documents for the purpose of effecting Insurance in various departments authorized from time to time by the Head office of the Corporation and to transact all and any business incidental thereto provided that the Insurance to be effected by and through the medium of the said John Ainsworth Kelly and Claud Norie-Miller as attorneys, Agents and Representatives of the said Corporation shall be according to such classes and rates of premium and shall not exceed upon any one risk or subject of insurance such sum as the Corporation shall or may from time to time order and direct in writing, and that all such insurances shall be expressly in the printed form of policies from time to time approved by the Corporation, and so that no policy be signed or issued under or by virtue of these presents except upon such printed forms.

"*Third.* To receive the premium or premiums payable in respect of any insurance or insurances thereupon, to give, grant, sign and execute all and sufficient receipts, acquittances or other discharges for the same, and in such receipts, acquittances or discharges or

otherwise bind the Corporation to the said insurance or insurances.

*"Fourth.* To sign any memorandum that shall or may be required to be endorsed upon any policy or policies.

*"Fifth.* To pay all losses, and settle and compromise all claims against the Corporation arising out of the said insurances on such terms and in such manner as the said attorneys may think fit in the interest of the Corporation, and to draw upon the Corporation in settlement of losses and for other purposes, and for the purposes aforesaid to employ and pay, if they should think fit, surveyors, valuers, solicitors, or other professional men on behalf of the Corporation.

*"Sixth.* To institute or defend legal proceedings or arbitrations in the name of or on behalf of the Corporation and to discontinue or become nonsuit, compromise or settle such proceedings or arbitrations.

*"Seventh.* To do, perform, transact, sign, seal, execute, grant and deliver all and every such further and other lawful and reasonable acts, deeds, documents, writings, matters and things whatsoever as may be found requisite and necessary for effecting all and singular on the intents and purposes aforesaid, for carrying or engaging in any business or transaction in the United States of America which the Corporation is authorized to carry on or engage in under the Memorandum and Articles of Association of the Corporation.

*"Eighth.* For the purpose aforesaid or any of them the said John Ainsworth Kelly and the said Claud Norie-Miller or either of them shall have power to endorse and sign for and on behalf of the Corporation by the firm name of Kelly and Norie-Miller, any cheques, dividends or interest warrants or other

Supreme Court, Appellate Term, January, 1917.   [Vol. 98.

instruments payable to the Corporation, to draw by cheque to be signed by the said John Ainsworth Kelly and Claud Norie-Miller or either of them or by any person or persons authorized by the said John Ainsworth Kelly and Claud Norie-Miller upon any bank account in the name of the Corporation in the United States of America, and in the name of the Corporation in the United States of America, and in the name and on behalf of the Corporation to pay into and draw from and generally to operate upon the said Bank Account of the Corporation in the United States of America, subject, however, to any instructions that may be given from time to time to the Bank by the Head Office of the Corporation.

"*Ninth.* To take proceedings necessary to make insolvent any debtor of the Corporation, and to attend and vote on behalf of the Corporation at any meeting of creditors called by or on behalf of any debtor of the Corporation; to act in any insolvent or assigned estates and take any proceeding or proceedings therein respectively and to assent to any release or compromise, and to prove debts against any insolvent estate, and to give receipts for any dividends or composition payable therein respectively.

"*Tenth.* To appoint and substitute one or more Attorney or Attorneys under them with all or any of the foregoing powers except the powers of substitution, and the same at pleasure to revoke and again substitute and appoint another or others in lieu of such attorney or attorneys so removed, and particularly the said John Ainsworth Kelly and Claud Norie-Miller are hereby authorized to appoint separate attorneys for each of the States in which the Corporation at present or at any future time may carry on business, or to ratify and confirm or to revoke any Power of Attorney hereinbefore granted by the Cor-

poration or by any previous Manager of the Corporation in the United States of America.

"*Eleventh.* The Corporation agrees to allow, ratify and confirm and whatsoever the said John Ainsworth Kelly and Claud Norie-Miller as such Attorneys, Agents and representatives of the Corporation, or their or any of their substitute or substitutes, shall or may lawfully do or cause to be done, effect in and about the premises by virtue of these presents or in pursuance of the written instructions which may from time to time be given by the Corporation."

It will be observed that the powers are granted both jointly and severally to the managers. It is difficult to see how any greater powers could be granted to the general managers. It is unnecessary to comment upon this instrument. It speaks for itself, and there can be no question as to the powers of Kelly under its provisions, if he deemed it necessary so to do, to take or send the plaintiff to any part of the world upon the defendant's United States business. It is claimed by defendant that the power is confined to business in the United States and does not include business out of the United States. That is quite true, but the employment of plaintiff relates to the business in the United States, and in no way relates to business in Europe. According to the uncontradicted testimony of the general manager, Kelly, the business which plaintiff was to transact in Europe related to transactions and business which took place wholly and exclusively in the United States. I can see no difference in sending plaintiff to Europe than sending him to Canada, if in the judgment of the general agents it was necessary for the best interests of defendant.

The record shows that even if the general manager did not expressly agree to pay the living expenses of plaintiff while traveling in defendant's business, it

was the general custom to do so, which custom was known to plaintiff when he conformed to the orders of the general manager and went to Europe with him.

The power of attorney is so full and explicit that it is unnecessary to cite authorities concerning the extent of the power granted. The general rule is that when the entire business management is placed in the hands of an agent the power of the agent is presumably equal to all the incidental requisites of the business. The plaintiff, I think, was justified, in view of the general custom found in the record, in assuming not only that his actual traveling expenses would be paid but also his reasonable living expenses.

The judgment should be reversed, with costs, and judgment entered in favor of plaintiff, with costs.

Judgment affirmed, with costs.